Barry J. Kell
Ingaldson Fitzgerald P.C.
813 W. 3rd Ave.
Anchorage, AK 99501
Phone: 907.258.8750
Email: barry@impc-law.com
      colleen@impc-law.com (Asst.)

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| RLI INSURANCE COMPANY, )<br>)<br>          Plaintiff, )<br>)<br>v. )<br>)<br>THOMAS LYNN FISHER, JR. and )<br>KRISTAN MERRITT-FISHER, )<br>)<br>          Defendants. )<br>_____) | Case No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT
AND EQUITABLE RESCISSION**

COMES NOW plaintiff RLI Insurance Company ("RLI"), through counsel Ingaldson Fitzgerald, P.C., and for its complaint against defendants Thomas Lynn Fisher, Jr. (referred to at times herein as "Thomas") and Kristan Merritt Fisher (referred to at times herein as "Kristan") (collectively referred to at times herein as the "Fishers"), states and alleges as follows:

COMPLAINT FOR DECLARATORY JUDGMENT AND EQUITABLE RESCISSION
*RLI Insurance Company v. Fisher,* Case No. 3:21-CV-\_\_\_\_

Page 1 of 19
Case 3:21-cv-00115-JMK    Document 1    Filed 05/11/21    Page 1 of 19

## PARTIES

1. RLI is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in the State of Illinois.

2. RLI is authorized to transact insurance business in the State of Alaska, has paid its corporation taxes last due, filed all required reports for the last reporting periods, and satisfied all conditions precedent to bringing and maintaining this action.

3. Upon information and belief, defendant Thomas Lynn Fisher, Jr. is and at all relevant times was a resident of Fairbanks, Alaska.

4. Upon information and belief, defendant Kristan Merritt Fisher is and at all relevant times was a resident of Fairbanks, Alaska.

## JURISDICTION AND VENUE

5. This an action for declaratory judgment and other relief, for which the court has jurisdiction pursuant to 28 U.S.C. § 2201.

6. This court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## GENERAL ALLEGATIONS

8. The Fishers completed a RLI Insurance Company Personal Umbrella Liability Insurance Application in April 2020, which Thomas signed electronically and

submitted to RLI on April 14, 2020 (the "Application"). A true and correct copy of the Application is attached hereto as Exhibit 1.

9. In reliance upon the statements and representations made by Thomas and Kristan in the Application, RLI issued a Personal Umbrella Liability Policy to the Fishers as named insureds, policy number PUP1389915 with a policy period of April 13, 2020 to April 13, 2021 (the "RLI Umbrella Policy"), which was in effect on February 3, 2021. A true and correct copy of the RLI Umbrella Policy is attached hereto as Exhibit 2.

10. On February 3, 2021, the Fishers' daughter Brooke Merritt Fisher (referred to at times herein as "Brooke") was a passenger in an automobile that was involved in a collision with another vehicle, which occurred near Gervais, Oregon (the "Accident"). On February 7, 2021, Brooke died of injuries she sustained in the Accident.

11. Brooke's date of birth was June 17, 1999. Brooke was twenty (20) years old at the time the Fishers submitted the Application and twenty-one (21) years old at the time of the Accident.

12. The Alaska Certificate of Title lists Thomas and Brooke as the registered owners the 2016 Ford Fusion automobile in which Brooke was a passenger at the time of the Accident.

13. The Fishers, through counsel, have demanded payment by RLI of the policy limits of the Excess Uninsured/Underinsured Motorist coverage provided under the RLI Umbrella Policy, for damages allegedly sustained by them and Brooke's estate as a result of the Accident.

## THE APPLICATION

14. The Application identifies Thomas and Kristan as the applicants and proposed insureds. Exhibit 1, p. 1. The Application includes several numbered questions that seek material information from and about the applicants/proposed insureds and the risks proposed to be insured under the RLI Umbrella Policy.

15. Question 1 on page 1 of the Application asks: "How many motorized vehicles licensed for road use (i.e., motor homes, motorcycles, cars, etc.) are owned (titled or registered to), leased rented, or regularly operated by **you** or any **member of your household**. (Do not include **antique**, **classic** or **collectible vehicles**. See Question 10.)" The Fishers stated the number of such vehicles to be four. Exhibit 1, p. 1.

16. Question 5 of the Application asks: "What is the total number of **drivers**? (… See the definition of **driver** on page 5.)" The Fishers state the number of such drivers to be two. Exhibit 1, p. 1.

17. Question 6 of the Application asks: "How many **drivers** are under the age of 22?" The Fishers stated the number of such drivers to be zero. Exhibit 1, p. 1.

18. Question 8 of the Application asks: "How many moving violations have all **drivers** had within the last 3 years? … (See question 26.)" The Fishers stated the number of such moving violations to be zero. Exhibit 1, p. 1.

19. Questions 10-15 of the Application are grouped together under the following statement: "Questions 10-15: Print the response clearly on the line provided. If the question

is unanswered or the response is greater than the maximum number indicated, the risk is not eligible. …" Exhibit 1, p. 2.

20. Question 14 of the Application asks: "How many driving **incidents** have all **drivers** ages 21 and under and/or 80 and over had within the last 3 years? (Max. 1 per **driver**.)" The Fishers stated the number of such incidents to be zero. Exhibit 1, p. 2.

21. Questions 16-22 of the Application are grouped together under the following statement: "Questions 16-22: Read and respond by checking 'Yes' or 'No'. If any question is unanswered or checked 'Yes', the risk is not eligible." Exhibit 1, p. 2.

22. Question 22 of the Application asks: "Has any one **driver** ages 21 and under or 80 and over had more than one driving **incident** within the last 3 years?" The Fishers stated "NO". Exhibit 1, p. 2.

23. Question 23 of the Application asks: "Do you elect to purchase or reject Excess UM/UIM coverage? (select one) …" On the Application, the box corresponding to "PURCHASE" contains an "X". Question 23 also states in relevant part: "EXCESS UNINSURED/UNDERINSURED MOTORIST (UM/UIM) COVERAGE: Excess UM/UIM coverage is offered for an additional premium. Required Basic UM/UIM policy limits must be equal to the liability limits for the Required Basic Automobile Liability Policy." Exhibit 1, p. 2.

24. Question 25 of the Application asks:

>(You MUST agree to one of the three limits below. If left unanswered, the risk is not eligible):

> Which of the following MINIMUM REQUIRED LIMITS OF AUTOMOBILE LIABILITY do all **drivers** agree to maintain as a condition of coverage for all licensed vehicles, that are owned (titled or registered to), leased, rented, operated or acquired during the policy period by **you** or any **member of your household**? If **you** elect to purchase Excess Uninsured/Underinsured Motorist (UM/UIM) coverage the Required Basic UM/UIM policy limits must be equal to the liability limits for the required Basic Automobile Liability Policy. … SELECT ONLY ONE LIMIT.

Question 25 lists two possible limits the applicant(s) can select as the amount they agree to maintain for their required Basic Automobile Liability Policy when they elect to purchase Excess UM/UIM, Limits A or B. On the Application, the Fishers put an "X" in the box corresponding to Limit B. Limit B requires bodily injury limits for the required Basic Automobile Liability Policy and Required Basic UM/UIM of $250,000 per person/$500,000 per occurrence, or $300,000 per person/$300,000 per occurrence, or $300,000 combined single limit per occurrence. Exhibit 1, p. 3.

25. Question 26 of the Application states: "Complete the following for all **drivers** AND **members of your household** ages 14 and older. Per the definition of **driver**, also include any other person who operates a vehicle owned (titled or registered to), leased, rented or regularly operated by **you** or a **member of your household** at least 50% or more of that vehicle's use." In the Application, the Fishers listed only Thomas and Kristan in response to that question. Exhibit 1, p. 4.

26. The Application contains the following definition of "**Member of your household**": "'**Member of your household**' means **your** spouse by marriage or civil union; any person related to **you** by blood or adoption, who resides with **you**, even if

temporarily away at school; and anyone else who resides with **you** while in **your** or a relative's care or custody." Exhibit 1, p. 5.

27. The Application defines "**You**", "**Your**", and "**I**" to mean "the applicant." Exhibit 1, p. 5.

28. The Application contains the following definition of "**Driver**":

> "**Driver**" means **you** and **members of your household** who operate motor vehicles licensed for road use, plus any other person who operates a vehicle owned, leased, rented, or regularly operated by **you** or a **member of your household** at least 50% or more of that vehicle's use. **Driver** includes any person with a learner's permit or valid driver's license. Vehicles owned by **you** or a **member of your household** include any vehicles titled to or registered in the name of **you** or a **member of your household**.

Exhibit 1, p. 5.

29. The Application contains the following definition of "**Incident(s)**": "'**Incident(s)**' includes any moving violation, **at-fault accident** and/or traffic arrest, citation or conviction." Exhibit 1, p. 5.

30. The Application contains a "QUESTION DETAILS" section that states in relevant part:

> **All Questions**: **You** and all **members of your household** should be considered when answering any question on this application.
>
> **Question 1**: … All vehicles licensed for road use need to be counted regardless of individual insurance. …

Exhibit 1, p. 5.

31. The Application contains a "PUP HELPFUL HINTS" section that states in relevant part: "**Drivers** age 21 and under or age 80 and over may not have any alcohol related **incidents**. These **drivers** may have only one **incident**." Exhibit 1, p. 5.

32. The Application contains the following two paragraphs directly above the "Applicant's Original Signature" line that state in relevant part:

> **FRAUD WARNING:** Any person who knowingly defrauds any insurance company or other person, files an application for insurance or statement of claim containing any materially false, incomplete, or misleading information, or conceals information concerning any material fact thereto, commits a fraudulent insurance act, which is a crime punishable by incarceration, and shall also be subject to civil penalties.
>
> **APPLICANT STATEMENT**: The information given on this application is true and complete to the best of my knowledge. I understand that any omission or misstatement of fact in the information given voids the policy. I agree that I will acquire and maintain Minimum Required Limits of Liability for all additional exposures (drivers, houses, vehicles, watercraft, etc.) if they become applicable during the policy period. …

Exhibit 1, p. 4.

33. In the Application, the Fishers did not disclose Brooke as a "**member of your household**" or a "**driver**," as those terms are defined in the Application. The Fishers affirmatively represented in the Application that the only "**drivers**" and "**members of your household**" to be insured under the RLI Umbrella Policy were Thomas and Kristan. The Fishers affirmatively represented in the Application that no "**drivers**" under the age of 22 were "**members of your household**."

34. In the Application, the Fishers affirmatively represented that, in the three years preceding the date of the Application, all "**drivers**," as that term is defined in the

COMPLAINT FOR DECLARATORY JUDGMENT AND EQUITABLE RESCISSION
*RLI Insurance Company v. Fisher,* Case No. 3:21-CV-____

Page 8 of 19
Case 3:21-cv-00115-JMK   Document 1   Filed 05/11/21   Page 8 of 19

Application, combined had zero moving violations, and that no "**driver**" ages 21 and under had more than one driving "**incident**," as that term is defined in the Application.

## THE RLI UMBRELLA POLICY

35. The Declarations of the RLI Umbrella Policy, Form PUP 301 (04/10) ("Declarations"), identify Thomas and Kristan as the named insureds, with a primary residence address of 478 Chatanika Drive, Fairbanks, Alaska 99708. Exhibit 2, p. 2 (Form PUP 301 (04/10), page 1 of 2).

36. The Declarations of the RLI Umbrella Policy contains a "**REQUIRED BASIC POLICIES**" that states in relevant part:

> It is agreed by you that you and any Relative will be covered by an Automobile liability policy for any Automobile you operate or your Relative operates for at least the minimum limits listed below. It is also agreed by you that you and any relative will be covered by a personal liability policy for at least the minimum limits listed below If you or your Relatives are not covered under your policies for at least the minimum limits listed below, they must be covered under another Automobile liability policy and another personal liability policy for at least the minimum limits below.

Under the "**REQUIRED BASIC POLICIES**" section, the "**Minimum Limit of Coverage**" for Bodily Injury required under the insureds' "**Basic Policy**" for both "Automobile Liability" coverage and "Uninsured/Underinsured Motorists" coverage are: $250,000 each person/$500,000 each occurrence; or $300,000 each person/$300,000 each occurrence; or Combined Single Limit of $300,000 each occurrence. Exhibit 2, pp. 2-3 (Form PUP 301 (04/10), pages 1-2 of 2).

COMPLAINT FOR DECLARATORY JUDGMENT AND EQUITABLE RESCISSION
*RLI Insurance Company v. Fisher,* Case No. 3:21-CV-____

Page 9 of 19
Case 3:21-cv-00115-JMK   Document 1   Filed 05/11/21   Page 9 of 19

37. The "**POLICY PROVISIONS**" of the RLI Umbrella Policy, Form PUP 320AK (07/15) ("Policy Provisions"), pages 1-2, contain the following definitions:

> PART I – DEFINITIONS
>
> In this policy, the words you, your or yours mean the person named in the Declarations as the Named Insured and his or her **Spouse** who lives in the same household. The words we, us our or ours mean RLI Insurance Company. Also, in this policy, the word:
>
> …
>
> B. **Basic Policy** or **Basic Policies** means a policy or policies listed in the Declarations (including renewals, temporary replacements for non-owned **Automobiles**, or endorsements) which provides primary liability coverage. **Basic Policy** or **Basic Policies** does not include a commercial or business general liability policy or other non-personal premises liability policy.
>
> …
>
> O. **Relative** means a person related to you by blood, marriage, civil union, or adoption who resides in your household on a fulltime basis and anyone else in your or a **Relative's** care residing in your household. Any child will be considered residing on your household on a fulltime basis if you or a **Relative** are a legal custodian of the child. A **Relative** includes a student under the age of 26 who is enrolled in school full time, as defined by the school, and residing temporarily away from home.

Exhibit 2, pp. 4-5 (Form PUP 320AK (07/15), pages 1-2 of 8).

38. The "**POLICY PROVISIONS**," page 6, contain the following condition:

> PART VII – CONDITIONS
>
> A. *Primary Insurance Requirements*
>
> 1. You agree that all required **Basic Policies** described in this Policy or the Declarations are in force at the limits described in the Declarations for any:
>
> …

b. **Automobile, Watercraft or Recreational Vehicle** owned, leased, rented or provided for the regular use of any covered person.

2. You agree that all required **Basic Policies** will be maintained with the coverages and at the limits declared and described in the Declarations. Such insurance shall not afford sublimits of liability with respect to any coverage or driver.

Exhibit 2, p. 9 (Form PUP 320AK (07/15), page 6 of 8).

39. The RLI Umbrella Policy contains a "**STATE OF ALASKA AMENDATORY ENDORSEMENT**", Form PUA 454AL (07/15), that includes the following relevant provisions:

This endorsement modifies insurance provided under the following:

PERSONAL UMBRELLA LIABILITY POLICY
POLICY PROVISIONS

The policy is amended, as of its effective date, as follows:

…
14) PART VII – CONDITIONS is amended by replacing Condition N., *Concealment – Misrepresentation*, as follows:

N. *Concealment – Misrepresentation*.

Misrepresentations, omissions, concealment of facts, and incorrect statements may not prevent a recovery under the policy or contract unless either

(1) fraudulent;

(2) material either to the acceptance of the risk, or to the hazard assumed by us; or

(3) we, in good faith, would either not have issued the policy or contract, or would not have issued a policy or contract in as large an amount, or at the same premium or rate, or would not have provided coverage with

COMPLAINT FOR DECLARATORY JUDGMENT AND EQUITABLE RESCISSION
*RLI Insurance Company v. Fisher,* Case No. 3:21-CV-____

Page 11 of 19
Case 3:21-cv-00115-JMK   Document 1   Filed 05/11/21   Page 11 of 19

respect to the hazard resulting in the loss, if the true facts had been made known to us as required either by the application for the policy or contract or otherwise.

Exhibit 2, pp. 12, 15 (Form PUA 454AL (07/15), pages 1 and 4 of 6).

40. The RLI Umbrella Policy provides Excess Uninsured/Underinsured Motorist Coverage ("Excess UM/UIM Coverage") in accordance with the terms stated in the RLI Umbrella Policy and with applicable law.

41. The "**EXCESS UNINSURED/UNDERINSURED MOTORIST ENDORSEMENT**" of the RLI Umbrella Policy, Form PUP 325AK (07/15), states in relevant part:

> This endorsement modifies insurance provided under the following:
>
> PERSONAL UMBRELLA LIABILITY POLICY
> POLICY PROVISIONS
>
> The policy is amended, as of its effective date unless another effective date is shown, as follows:
>
> 1) PART III – WHAT WE WILL DO is amended by the addition of the following:
>
> **Excess Uninsured/Underinsured Motorist Coverage.**
>
> We will pay those sums which you or your **Relative** is legally entitled to recover as damages from an uninsured or underinsured motorist because of **Bodily Injury** to which this insurance applies, caused by an **Accident** and in excess of all **Underlying Insurance** up to and not to exceed the Excess Uninsured/Underinsured Motorists Limit of Coverage shown on the Declarations. We will pay only in excess of the Uninsured/Underinsured Motorist Coverage required to be maintained under the Required **Basic Policies** as set forth in the Declarations. This coverage, except where provisions to the contrary appear in this policy including all endorsements, is subject to all the conditions, agreements, definitions, exclusions and

limitations of, and shall follow the Required Basic Uninsured/Underinsured Motorist policy in all respects.

This insurance applies only if:

a. The policy limits of any and all **Underlying Insurance** have been exhausted by payment of judgments or settlements.

b. You and your **Relatives** maintain Uninsured Motorist Coverage and Underinsured Motorist Coverage at limits equal to or greater than the Minimum Limits of Coverage as shown in the Required **Basic Policies** section of the Declarations for such coverages. Failure to maintain the applicable Minimum Limit of Coverage as shown in the Required **Basic Policies** section of the Declarations for Uninsured/Underinsured Motorists eliminates coverage under this Excess Uninsured/Underinsured Motorist Coverage.

…

5) Solely for the purpose of this endorsement, PART I – DEFINITIONS is amended to include the following:

**Underlying Insurance** means the Required Basic Uninsured/Underinsured Policy as shown in the Declarations and any other applicable liability, uninsured and/or underinsured motorist coverage, and any bond.

Exhibit 2, pp. 18-19 (Form PUP 325AK (07/15), pages 1-2 of 2).

## THE FISHERS' AND BROOKE'S UNDERLYING INSURANCE POLICIES

42. At the time of the Accident, the Fishers were the named insureds under an automobile liability insurance policy issued by Allstate Fire and Casualty Insurance Company, Allstate auto policy number 987930745 ("Allstate Policy").

43. The Declarations for the Allstate Policy list five vehicles as insured vehicles under that policy. Exhibit 3, p. 1.

44. The 2016 Ford Fusion automobile in which Brooke was a passenger at the time of the Accident is not among the vehicles listed as insured vehicles under the Declarations for the Allstate Policy. Exhibit 3, p. 1.

45. The Declarations for the Allstate Policy state that the uninsured/underinsured motorists bodily injury coverage limits applicable to each of the five vehicles listed as insured vehicles under that policy are $100,000 each person/$300,000 each accident. Exhibit 3, pp. 4-7.

46. At the time of the Accident, Brooke was the named insured under an automobile liability insurance policy issued by Progressive Direct Insurance Co., policy number 933225790 ("Progressive Policy"). A true and correct copy of the Progressive Policy is attached hereto as Exhibit 4.

47. The Declarations for the Progressive Policy list the 2016 Ford Fusion automobile owned by Thomas and Brooke as the only vehicle specifically covered under that policy, and state that the uninsured/underinsured motorists bodily injury coverage limits applicable to that vehicle are $50,000 each person/$100,000 each accident. Exhibit 4, p. 4.

# FIRST CLAIM FOR RELIEF:
# DECLARATORY JUDGMENT THAT THE FISHERS ARE NOT COVERED UNDER THE EXCESS UM/UIM COVERAGE WITH RESPECT TO THE ACCIDENT BECAUSE THE FISHERS AND BROOKE DID NOT MAINTAIN THE REQUIRED MINIMUM LIMIT OF COVERAGE ON THEIR BASIC UM/UIM POLICIES

48. RLI realleges and incorporates by reference the allegations contained in paragraphs 1 through 47 set forth above.

49. Coverage under the RLI Umbrella Policy is expressly conditioned on the named insureds maintaining "all required Basic Policies … with the coverages and at the limits declared and described in the Declarations."

50. By its terms, the Excess UM/UIM Coverage provided under the RLI Umbrella Policy applies only if the named insureds and the named insureds' "**Relatives**" "maintain Uninsured Motorist Coverage and Underinsured Motorist Coverage at limits equal to or greater than the Minimum Limits of Coverage as shown in the Required **Basic Policies** section of the Declarations for such coverages."

51. The Excess UM/UIM Coverage also provides: "Failure to maintain the applicable Minimum Limit of Coverage as shown in the Required **Basic Policies** section of the Declarations for Uninsured/Underinsured Motorists eliminates coverage under this Excess Uninsured/Underinsured Motorist Coverage."

52. Under the RLI Umbrella Policy, the required Minimum Limit of Coverage for the Uninsured/Underinsured Motorists **Basic Policy** is $250,000 each person/$500,000

each occurrence; or $300,000 each person/$300,000 each occurrence; or Combined Single Limit of $300,000 each occurrence.

53. The uninsured/underinsured motorists coverage limits under the Fishers' Allstate Policy are $100,000 each person/$300,000 each accident.

54. The uninsured/underinsured motorists coverage limits under Brooke's Progressive Policy are $50,000 each person/$100,000 each accident.

55. Thomas, Kristan, and Brooke did not maintain the Minimum Limit of Coverage as shown in the Required **Basic Policies** for uninsured/underinsured motorists coverage under either the Allstate Policy or the Progressive Policy.

56. Because Thomas, Kristan, and Brooke did not maintain the Minimum Limit of Coverage as shown in the Required **Basic Policies** for uninsured/underinsured motorists coverage, there is no coverage under the Excess UM/UIM Coverage of the RLI Umbrella Policy for any uninsured/underinsured motorists claims arising from the Accident.

57. RLI is entitled to a declaration that there is no coverage under the Excess UM/UIM Coverage of the RLI Umbrella Policy with respect to any and all uninsured/underinsured motorists claims by, through, or on behalf of Thomas, Kristan, Brooke, and/or Brooke's estate arising from or related to the Accident.

## SECOND CLAIM FOR RELIEF: EQUITABLE RESCISSION

58. RLI realleges and incorporates by reference the allegations contained in paragraphs 1 through 57 set forth above.

59. The Fishers have asserted claims under the Excess UM/UIM Coverage of the RLI Policy arising from Brooke's death in the Accident.

60. The Excess UM/UIM Coverage of the RLI Umbrella Policy only applies to named insureds and a "**Relative**" of the named insureds.

61. Brooke is not a named insured under the RLI Umbrella Policy. As the Fishers' daughter, Brooke would qualify as a "**Relative**" only if she resided in their household on a fulltime basis, or was enrolled in school full time and temporarily resided away from the Fishers' home.

62. Thomas and Kristan represented through the Application that they were the only "**drivers**" and "**members of your household**" ages 14 and older to be insured under the RLI Umbrella Policy, that no other person operated a vehicle owned by the Fishers, and that they were not seeking coverage under the RLI Umbrella Policy for any person other than themselves.

63. Thomas and Kristan represented through the Application that a total of two "**drivers**" would be insured under the RLI Umbrella Policy, that they were not seeking coverage for any "**drivers**" under the age of 22, and that no "**driver**" aged 21 or under had any driving "**incidents**" within the three years preceding the date of the Application.

64. In the Application, Thomas and Kristan did not disclose Brooke, who was 20 years old at the time of the Application, as a "**member of your household**" or a "**driver**," or that Brooke had more than one driving "**incident**" within the three years preceding the date of the Application.

65. The failure of Thomas and Kristan to disclose Brooke in the Application as a "**member of your household**" or a "**driver**," and their failure to disclose that Brooke had more than one driving "**incident**" within the three years preceding the date of the Application, were false and misleading, and constitute misrepresentations, omissions, concealment of facts, and/or incorrect statements in the Application, in violation of AS 21.42.110, and in violation of their contractual duties under the Application and the RLI Umbrella Policy.

66. The failure of Thomas and Kristan to disclose Brooke in the Application as a "**member of your household**" or a "**driver**," and their failure to disclose that Brooke had had more than one driving "**incident**" within the three years preceding the date of the Application, were material to RLI's acceptance of the Application and issuance of the RLI Umbrella Policy, and were material to RLI's acceptance of the risk and/or to the hazard assumed by RLI.

67. RLI in good faith would either not have issued the RLI Umbrella Policy, or would not have issued a policy or contract at the same premium or rate, or would not have provided coverage with respect to the hazard resulting in the loss from the Accident, if the true facts had been made known to RLI as required by the Application and under Alaska law.

68. As a result of the Fishers' material misrepresentations, omissions, concealment of facts, and/or incorrect statements in the Application, RLI is entitled to a declaration rescinding the RLI Umbrella Policy, declaring it void *ab initio*, and declaring

that there is no coverage under the RLI Umbrella Policy as to any and all claims arising from or related to the Accident.

WHEREFORE, RLI prays for the following relief:

A. For a declaratory judgment in its favor that there is no coverage under the Excess UM/UIM Coverage of the RLI Umbrella Policy with respect to any and all uninsured/underinsured motorists claims by, though, or on behalf of Thomas, Kristan, Brooke, and/or Brooke's estate arising from or related to the Accident;

B. For a declaratory judgment in its favor rescinding the RLI Umbrella Policy, declaring it void *ab initio*, and declaring that there is no coverage under the RLI Umbrella Policy as to any and all claims arising from or related to the Accident;

C. For an award of its reasonable attorney's fees and costs incurred in bringing this action;

D. For such other and further relief as this Court deems just and equitable under the circumstances.

DATED at Anchorage, Alaska this 11th day of May, 2021.

INGALDSON FITZGERALD, P.C.
Attorneys for Plaintiff
RLI Insurance Company

By: /s/ Barry J. Kell
Barry J. Kell
ABA No.: 8611120